(A. R. D. 50)

UNITED STATES v. D. HAUSER

Entry No. 1152.

First Division, Appellate Term

(Decided November 24, 1954)

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.
Appellee not represented by counsel.

Before OLIVER, LAWRENCE, and FORD, Judges; FORD, J., dissenting

OLIVER, Chief Judge: This case comes before us as an application for review of the decision reported in *United States* v. *D. Hauser*, 28 Cust. Ct. 551, Reap. Dec. 8085, wherein the trial judge dismissed the appeal for reappraisement "for failure of the collector to name the proper defendant to the action."

Because the jurisdictional question involved is a novel one, it is pertinent to a proper disposition of this matter to here set forth the facts as they appear of record.

The merchandise involved consists of brooms, exported from Cuba and entered at the port of Tampa, Fla. The entry, which was made on May 16, 1945, showed "D. Hauser, 305 Morgan St., Tampa, Fla." to be the importer of record "for the account of Circle F. Distributing Co." At the time of entry, D. Hauser executed the "Declaration of Nominal Consignee or Agent," appearing on the back of the entry, and wherein D. Hauser showed that he was not the owner of the merchandise and that these brooms were imported by the Circle F.

Distributing Co. of Marble Arcade, Lakeland, Fla. (hereinafter referred to as "Circle F."), who, he declared, was the actual owner for customs purposes.

On May 17, 1945, the day after entry of the present merchandise, said D. Hauser filed in the office of the collector of customs at Tampa, Fla., the "Declaration of Owner," bearing the typewritten signature "Circle F. Distributing Co.," followed by the handwritten signature "Viola L. Fuchs, Sole Owner" identified as the "Principal."

The merchandise was invoiced, entered, and appraised at $5.25 per dozen, net, packed. The collector of customs appealed for reappraisement, which appeal, addressed to this court and signed by "A. J. Angle, Collector," reads as follows:

I hereby appeal for a reappraisement by a Judge of the United States Customs Court from the appraisement by the United States Appraiser, in accordance with the provisions of section 501 of the Tariff Act of 1930, as amended by section 16 (b) of the Customs Administrative Act of 1938, of certain Brooms imported by D. Hauser in the S. S. ARROW, entered 16 May 1945, Entry No. 1152, Invoice No. Pro forma.

The notice to interested parties concerning an appeal for reappraisement was fixed by statute (section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938), reading, so far as pertinent, as follows:

* * * The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * * Reasonable notice shall be given to the importer and to the person designated to represent the Government in such proceedings of the time and place of the hearing, at which the parties and their attorneys shall have an opportunity to introduce evidence and to hear and cross-examine the witnesses of the other party and to inspect all samples and all papers admitted or offered as evidence. * * *

While the statute, section 501, as amended, *supra*, is silent concerning the designation of parties plaintiff and parties defendant, a rule of this court (rule 36, adopted May 29, 1936) made provision therefor in the following language:

## 36. DESIGNATIONS OF PARTIES TO CASES

In all actions or suits within the jurisdiction of the United States Customs Court, whether involving acts of the appraiser or acts or decisions of the collector or his refusal to act or decide, the party instituting the action shall, in the caption and pleadings, be designated as the "plaintiff" and the opposite party the "defendant," except when applications for review are taken from the decision of a judge sitting in reappraisement to a division of three for review, the applicant for review in such case shall be styled the "appellant" and the opposite party the "appellee," and in the case of petitions for remission of additional duties the

applicant shall be styled the "petitioner" and the opposite party the "respondent."

When the appeal for reappraisement now under consideration was received by this court, the case was titled, pursuant to said rule 36, under the style of "United States, plaintiff, *v.* D. Hauser, defendant," and "Reasonable notice," as required by the statute and specifically fixed under a rule of this court (rule 14, adopted May 29, 1936), was sent to the "plaintiff" and to the "defendant."

The case first appeared on a New York calendar in November 1949. At that time, D. Hauser appeared before the trial judge and, after explaining that as a licensed customhouse broker he made the entry in question "for account of the owner and ultimate consignee, the Circle F. Distributing Company, Lakeland, Florida," he concluded with the following statement:

> I filed the owner's declaration on May 17th, 1945 as per receipt to that effect by the Collector of Customs at Tampa, Florida. I therefore respectfully request that my name be withdrawn from this case in view of the foregoing statement, that's all, your Honor. I also suggest that I be relieved of any responsibility or any liability, and that the owner of the goods be substituted for my name, that owner being the Circle F. Distributing Company as per their signed and sworn statement as represented by the declaration of ownership.

The trial judge issued no order for substitution of the party defendant to the proceeding, but, instead, directed the clerk of the court to "notify the Circle F. Distributing Company, Marble Arcade, Lakeland, Florida, that this matter will come up again at Tampa, Florida, at which port the case is being transferred and notice shall be sent to them to be present and appear in Court."

Pursuant to that directive, timely notice was given to "Circle F." to appear before the court in Tampa, Fla., and the court's calendar docketed this case under the caption "United States, plaintiff, *v.* D. Hauser—Circle F. Distributing Company, defendant." In response to the said notice and at a regular session of this court in Tampa, Fla., on March 23, 1950, "A Miss Fuchs appeared" on behalf of "Circle F." "and she stated she didn't know what to do and she had no lawyer, so the court thought that perhaps she should get some legal advice, and the case was continued. No testimony took place or was given at Tampa." (See court reporter's endorsement on letter from said "Miss Fuchs" to this court, under date of February 8, 1951.)

At the next hearing in Tampa, Fla., on February 23, 1951, no one appeared on behalf of defendant, but the Government proceeded with its case and offered evidence to support the collector's appeal for reappraisement, and then the matter was submitted for decision. Later, and on June 19, 1951, the submission was set aside *sua sponte* by the judge before whom the case was tried. It should be noted that the memorandum accompanying the order setting aside the sub-

mission is to the effect that "Circle F." had received due notice, but D. Hauser was not notified "of the presence of this litigation on the Tampa docket of February 23, 1951."

Thereafter, and on November 13, 1951, the case again appeared on the calendar at Tampa, Fla., under the caption "United States, plaintiff, *v.* D. Hauser—Circle F. Distributing Co., defendant." At that time, there was no appearance either by D. Hauser or on behalf of "Circle F." After Government counsel explained that "proper notice" had been given to the parties, the court ordered the case submitted.

The decision of the trial judge cited the case of *Match Import Co., Inc.* v. *United States*, 4 Cust. Ct. 694, Reap. Dec. 4762, which related to the motion of a surety company to intervene as a party plaintiff in certain reappraisement proceedings. The facts and circumstances shown therein render the cited case distinguishable from the present one.

The proposition now before us involves what the Supreme Court defined in holding that "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean*, 234 U. S. 385, 394. As stated in *Mullane* v. *Central Hanover Trust Co. et al.*, 339 U. S. 306 (at p. 314), "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." The subject is further discussed in the said *Mullane* v. *Central Hanover Trust Co. et al.* case, as follows (pp. 314, 315):

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer*, 311 U. S. 457; *Grannis* v. *Ordean*, 234 U. S. 385; *Priest* v. *Las Vegas*, 232 U. S. 604; *Roller* v. *Holly*, 176 U. S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean*, *supra*, and it must afford reasonable time for those interested to make their appearance, *Roller* v. *Holly*, *supra*, and *cf. Goodrich* v. *Ferris*, 214 U. S. 71. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co.* v. *Zeiss*, 219 U. S. 47, 67; and see *Blinn* v. *Nelson*, 22 U. S. 1, 7.

Under the principles enunciated in the cited authorities, there is neither basis in fact nor warranty in law to support the action of the trial judge dismissing this appeal for reappraisement. The interested parties were apprised of the pendency of the action, and all received reasonable notice within the requirements of the statute and as provided by rules of court.

Under the facts and circumstances, as hereinabove outlined, we find and hold that the jurisdiction of this court was lawfully invoked

by the appeal for reappraisement in controversy, and that it was properly before the single judge for determination of the value of the merchandise.

The judgment of the trial court is reversed, and the case is remanded for disposition on the merits.

### DISSENTING OPINION

Ford, Judge: For reasons which will be presently stated, it is my view that the action of the trial court dismissing the involved reappraisement proceeding "for failure of the collector to name the proper defendant to the action" was correct and should be affirmed.

It appears that a document on customs Form 4325, denominated "Collector's Appeal for Reappraisement by a Judge of the United States Customs Court," and dated June 11, 1945, was prepared and signed by one "A. J. Angle, Collector." The document is addressed to the United States Customs Court, and the body thereof reads as follows:

I hereby appeal for a reappraisement by a Judge of the United States Customs Court from the appraisement by the United States Appraiser, in accordance with the provisions of section 501 of the Tariff Act of 1930, as amended by section 16 (b) of the Customs Administrative Act of 1938, of certain brooms imported by D. Hauser in the S. S. Arrow, entered 16 May, 1945, Entry No. 1152, Invoice No. Pro forma.

This record establishes that the involved merchandise was not imported by D. Hauser, but that it was imported by D. Hauser, 305 Morgan Street, Tampa, Fla., for the account of Circle F. Distributing Co., Marble Arcade, Lakeland, Fla. At the time of entry, the said D. Hauser executed the "Declaration of Nominal Consignee or Agent," printed on the back of the entry, in which he stated that he was not the actual owner of the merchandise but that the same had been imported by the Circle F. Distributing Co. of Marble Arcade, Lakeland, Fla., who, he declared, was the actual owner for customs purposes.

On May 17, 1945, the said D. Hauser caused to be filed in the office of the collector at Tampa, Fla., the "Declaration of Owner" on customs Form 3347, called for by section 485 (d) of the Tariff Act of 1930, bearing the typewritten signature "Circle F. Distributing Co.," followed by the handwritten signature "Viola L. Fuchs," with the title of "Principal" and "Sole owner" checked.

It thus appears that when the collector filed the instant appeal, he had been notified by D. Hauser some 25 days before that he, the said D. Hauser, was not the actual importer of the involved merchandise, but that Circle F. Distributing Co. was the actual importer and owner of said merchandise. Said section 485 (d), in conformity with which the "Declaration of Owner" was filed, provides as follows:

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise,

(2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee.

This record establishes that the said D. Hauser performed the three acts required by said section 485 (d), thereby relieving him of all liability for any additional or increased duties. It is, therefore, clear from the foregoing that should this litigation result in a higher value for this merchandise, as a consequence of which a higher duty would be due, that D. Hauser has relieved himself of any and all liability for additional or increased duties. A judgment against the said D. Hauser would, therefore, avail nothing, even if it should be held that the said D. Hauser, was a proper party defendant in the original appeal.

Bearing in mind the fact that D. Hauser, on May 17, 1945, filed with the collector of customs at Tampa, Fla., the declaration of owner, by which he relieved himself of all liability for any additional or increased duties, and that this appeal was not filed until June 13, 1945, it is my view that, at the time this appeal was filed, D. Hauser had severed all his connections with this case as nominal consignee, agent, or otherwise, and was, therefore, not a proper party defendant. To hold otherwise, would require the assumption that the authorization to make entry of this merchandise as agent of Circle F. Distributing Co. *ipso facto* made him the agent of Circle F. Distributing Co. for all purposes. To this assumption, I cannot subscribe. This view finds confirmation in the following from 2 American Jurisprudence, pages 71, 72, 73, 74:

\* \* \* An authority to do a specific thing does not authorize by implication the doing of other and separate things. The incidental authority of an agent is limited to those acts which are of like kind with the acts he is expressly empowered to do, and from which the authority is implied. Acts which are not in the ordinary course of the business which the agent is employed to transact, especially those which are so unusual, remarkable, or adverse to the interests of the principal as to arouse the inquiry of a man of average business prudence, do not come within the scope of the implied powers. \* \* \*

\*        \*        \*        \*        \*        \*        \*

There is a marked distinction between the power and authority of a general agent; and that of a special agent, to bind his principal. A general agent is usually authorized to do all acts connected with the business or employment in which he is engaged, while a special agent is only authorized to do specific acts in pursuance of particular instructions, or with restrictions necessarily implied from the act to be done. As defined by the American Law Institute, a general agent is one authorized to conduct a series of transactions involving a continuity of service, while the business agent is authorized to conduct a single transaction or series of transactions not involving a continuity of service. \* \* \*

The distinction between a general and a special agent is vital in respect of the authority which a third person may be justified in believing the agent to possess, and, correspondingly, as to the effort and inquiry which such third person must make to ascertain the extent of the agent's authority.

Under the facts of this case and the authority quoted above, it is my view that D. Hauser is not a proper party against whom this suit can be maintained, nor was he such an agent of the principal as would authorize this suit to be maintained against him. D. Hauser not being the proper party in either of the respects just stated, it would appear that this court was without jurisdiction to render a legal judgment in this case against D. Hauser.

In support of this view, the following is quoted from Brown on Jurisdiction, second edition, page 5:

§ 2. **Jurisdiction defined.** Needham v. Thayer, 147 Mass. 536: "A jurisdictional recital cannot exclude the truth." Jurisdiction is the power conferred on a court, by constitution or Statute, to take cognizance of the subject matter of a litigation and the parties brought before it, and to legally hear, try and determine the issues, and render judgment according to the general rules of law, upon the issues joined, be they either of law or of fact, or both. It does not consist in the declaration of the right, but the right to declare the law justly, and therefore presupposes that proper efforts have been made to bring into court the parties that are to be affected by its exercise. There must be a right in dispute between two or more parties; a proceeding commenced under the proper rules of the law; process formal in its character served on the opposite party, or parties to the proceedings; the subject matter must be one that the court is empowered to hear and determine; the parties must have the right to be heard and be within the jurisdiction of the court; or the property, if that be the subject of the action, must be within such jurisdiction, and the owner or person having the right to claim it, or to be heard, must be notified as required by law of the pendency of the proceeding.

*Hope* v. *Blair*, 105 Mo. 85, 24 Am. St. Rep. 366, holds as follows:

The subject-matter of a suit, when reference is made to questions of jurisdiction, is defined to mean "the nature of the cause of action and of the relief sought": *Cooper* v. *Reynolds*, 10 Wall. 316. "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in a given case. To constitute this there are three essentials: 1. The court must have cognizance of the class of cases to which the one adjudged belongs; 2. *The proper parties must be present*; and 3. The point decided must be, in substance and effect, within the issue." [Italics mine.]

In Brown on Jurisdiction, *supra*, pages 189, 190, under the caption of "Process and service," the following is stated:

When a legal proceeding is commenced against a person or corporation, whether resident within the jurisdiction of the court in which it is begun or not, and whether the proceeding is *in rem* or *in personam*, the defendant must be served with process in some one of the forms provided by law, or a voluntary appearance must be made by or on his behalf. The notice, if there is no appearance is jurisdictional. Although much has been said by courts touching jurisdiction derived from the filing of a petition, seizure of property by attachment, garnishment or other means of sequestration, we hold that the rule to-day is that there must be service of process made on the defendant in some form to give the court jurisdiction over the property seized; otherwise the judgment would be an arbitrary edict, condemning without hearing.

In every action there must be a party plaintiff and a party defendant, and there must be a controversy upon which an issue can be formed. The very purpose of

the court is to determine that issue or the issues. The court must have a plaintiff invoking relief against some defendant.

I am in complete accord with the sound pronouncements regarding "due process" announced in *Mullane* v. *Central Hanover Trust Co. et al.*, 339 U. S. 306. It will be observed, however, that the due process there referred to was "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Since D. Hauser was not and is not an interested party in or to this proceeding, it is clear that the pronouncements made in the *Mullane* case, *supra*, have no application to D. Hauser in this case.

Section 501 of the Tariff Act of 1930, as amended, provides that:

* * * The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, * * *.

A mere reading of the provisions of said section 501, *supra*, is convincing that the proceedings contemplated thereby, whether initiated by or on behalf of the consignee, or by the collector on behalf of the United States, are adversary proceedings, as a result of which liability, or full or partial freedom from liability, for increased and additional duties may ensue.

It should be borne in mind that the collector named and notified D. Hauser *in his own name* and not in the capacity of agent for any one. In my opinion, the court below properly held that a proceeding against D. Hauser in his own name as consignee could not be maintained as he had divested himself of the status of consignee long prior to the time the appeal was filed against him. Appellant's allegation that this proceeding is, nevertheless, maintainable against D. Hauser as agent of the consignee appears to be based entirely upon the apparent relationship of the parties as customs broker and importer. There is no showing as to the extent of any actual agency between D. Hauser and the Circle F. Distributing Co. I am of the opinion that any agency in D. Hauser that might be implied by reason of his acting as customs broker for the Circle F. Distributing Co. in making entry of the merchandise would not go to the extent of making him a proper party defendant, or of permitting notice to him to be construed as notice to the Circle F. Distributing Co.

The appraiser's report in this case, referred to in said section 501, is dated May 21, 1945. There is nothing on the appraiser's report or on any of the other official papers to indicate when the said report was filed with the collector. In considering a similar question in the case of *United States* v. *C. V. Vance*, 69 Treas. Dec. 1637, Reap. Dec. 3904, affirmed in 72 Treas. Dec. 1011, Reap. Dec. 4081, this court said:

In *Ainslee Knitting Machine Co., Inc.* v. *United States*, T. D. 48339, this court held that unless and until the collector receives from the appraiser the latter's report accompanied by the appraised invoice, the merchandise covered thereby is unappraised and no lawful liquidation of the entry may be made. It was there judicially enunciated that an appraisement becomes final and subject to no further change by the local appraiser when his report thereon and the appraised invoice have been lodged with the collector, and that until then the matter is within the jurisdiction of the appraiser and of course subject to such changes as he may deem necessary in determining the value of the merchandise.

The collector's appeal in this case was filed with the United States Customs Court on June 13, 1945. Certainly, this appeal was not filed prior to the time the appraiser's report accompanied by the appraised invoice had been lodged with the collector. Therefore, not more than 60 days after June 13, 1945, the time within which the collector could file an appeal in this case, expired. Under date of November 14, 1949, a judge of this court instructed the clerk to "notify the Circle F. Distributing Company, Marble Arcade, Lakeland, Florida, that this matter will come up again at Tampa, Florida, at which port the case is being transferred and notice shall be sent to them to be present and appear in Court." This was some 4 years after the time had expired within which the collector could have filed an appeal against the Circle F. Distributing Co. as a party defendant in this case. Furthermore, no reason appears why the Circle F. Distributing Co. should have responded to such a notice. And even if the Circle F. Distributing Co. did appear in court in response to such notice, such act on its part could not operate to substitute the Circle F. Distributing Co. as a party defendant for and in the place of D. Hauser, or to make it a party defendant under any circumstances, the time within which an appeal might have been filed having long since expired.

In view of the fact that this appeal was not filed against the proper party defendant, it was a nullity from its inception. The only manner in which the Circle F. Distributing Co. could have been made a party defendant in a proceeding before this court to secure a higher value for the involved brooms would have been for the collector to have filed an appeal against the Circle F. Distributing Co. within the time specified in section 501, *supra*, or within such time filed a motion before this court to have the Circle F. Distributing Co. substituted for and in the place of D. Hauser. Neither of these courses of action did the collector follow. It is, therefore, my view that there is nothing before the court at the present time which it can adjudicate on the merits.

In line with the views heretofore expressed, I would affirm the judgment of the trial court dismissing this appeal "for failure of the collector to name the proper defendant to the action."