(Reap. Dec. 8451)

UNITED STATES *v.* D. HAUSER

Entry No. 1152.

(Decided on remand [A. R. D. 50] June 17, 1955)

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the plaintiff.

Defendant not represented by counsel.

JOHNSON, Judge: This is a collector's appeal for reappraisement of brooms, exported from Cuba on or about May 12, 1945.

The merchandise consists of 300 dozen 5-string corn brooms, invoiced, entered, and appraised at $5.25 per dozen. The Government claims that the correct dutiable value is $5.90 per dozen, net packed.

When this case appeared on the calendar, after a transfer to New York, the defendant originally named, D. Hauser, appeared in person and stated that he was a licensed customhouse broker; that he had made the entry herein for Circle F. Distributing Co., the owner and ultimate consignee; and that an owner's declaration had been timely filed. He claimed that he was, therefore, relieved of all responsibility and liability in connection with the case and asked that his name be withdrawn. This request was not acted upon, but the case was retransferred to Tampa, and the court directed that Circle F. Distributing Co. be notified of the hearing.

When the case was called at Tampa, there was an appearance by a Miss Fuchs [apparently of Circle F. Distributing Co.], who stated that she had no counsel, and a continuance was granted. At a subsequent hearing, no one appeared on behalf of the defendant, and the Government introduced into evidence a report of Treasury Representative Joseph H. Dillon, dated February 8, 1946 (plaintiff's exhibit 1). Thereafter, the case was restored to the calendar, but again no one appeared on behalf of the defendant, and the case was resubmitted on the record already made.

After an examination of the record, the trial court held that it had no jurisdiction because the collector had failed to name the proper defendant, and the proceeding was dismissed. *United States* v. *D. Hauser*, 28 Cust. Ct. 551, Reap. Dec. 8085.

On appeal, the appellate division held that all interested parties had received reasonable notice of the proceedings and that the appeal for reappraisement had lawfully invoked the jurisdiction of the court. The judgment of the trial court was reversed and the case remanded for disposition on the merits. *United States* v. *D. Hauser*, 33 Cust. Ct. 583, A. R. D. 50.

Accordingly, the case is before me for a determination of the value of the merchandise. The only evidence on this issue is the report of Treasury Representative Dillon, heretofore mentioned. In the body of the report, Mr. Dillon states that, on January 21, 1946, and subsequently, he visited the offices of M. de Murga, Fernandez y Cía. [the seller of the within merchandise] and inspected the books and records of the firm and obtained additional information from Francisco Fernandez Helguera, part owner and manager. The report continues:

*MERCHANDISE*:

The merchandise covered by the transactions consists of 2 to 6 thread brooms made of broom straw manufactured by M. de Murga, Fernandez y Cia., Calle Sol No. 7, Habana, Cuba. * * *

According to Mr. Fernandez, the brooms which are sold for export to the United States are of a much higher quality than those sold to Puerto Rico and in Cuba. The brooms manufactured for sale to the United States are made according to set specifications, such as a better grade wooden handle, the broom corn is cleansed of all seeds and dyed green, more wire is used in the manufacture of the article, and they are paper wrapped for shipment. It was stated that an extra charge of 10 cents per dozen is made for dying [*sic*] the broom corn, and *the prices arrived at through bargaining are higher than those obtained in Cuba and Puerto Rico.* [Italics supplied.]

### EXPORT VALUE

*PRICE LISTS—CATALOGUES:*

Neither price lists nor catalogues are issued by the manufacturer for export trade to the United States or other countries.

*OFFERS FOR SALE:*

* * * Brooms of higher quality, as described under "Merchandise" are freely offered and sold to all purchasers in the United States without any restrictions or concessions regarding the quantity purchased or the class of buyer.

The report also states that the principal market is Havana, Cuba; that no discounts are freely granted, but that, on occasion, a 5 per centum discount has been granted; and that normally no commissions are granted but, by exception, a 5 per centum selling commission, which was included in the price, was given to Marina Trading Co.

The report describes certain sales for export to the United States and Puerto Rico in 1944 and 1945 and contains a tabulation of other sales for export during that period. Since the merchandise involved herein was exported on May 12, 1945, the following sales during 1945 are pertinent:

| Customer | Quantity & quality | Date (1945) | Price, etc. (per doz.) |
| --- | --- | --- | --- |
| T. W. Holt & Co. Jacksonville, Fla. | 50 doz. 5-string | 1/12 | $5.75 |
| A. Becker & Co. Boston, Mass. | 500 doz. 5-string | 1/26 | 4.75 |

| Customer | Quantity & quality | Date (1945) | Price, etc. (per doz.) |
|---|---|---|---|
| E. M. Howard<br>Mount Pleasant, Mich. | -------- | 1/27 | ---5% discount |
| Jacob Levington<br>Miami, Fla. | -------- | 1/31 | -------- |
| Richard Watson<br>Miami, Fla. | 400 doz.<br>5-string | 2/21 | 5.90 5% commission included |
| Jacob Levington<br>Miami, Fla. | 200 doz.<br>5-string | 2/21 | 5.70 |
| Harman Hulsey<br>Tampa, Fla. | -------- | 3/13 | -------- |
| Harmon & Hulsey<br>Tampa, Fla. | 375 doz.<br>5-string | 3/28 | 5.25 |
| Richard Watson<br>Miami, Fla. | 200 doz.<br>5-string | 4/1 | 5.90 |
| A. Becker & Co.<br>Boston, Mass. | 300 doz.<br>5-string | 4/6 | 5.25 less 5% discount |
| Richard Watson<br>Miami, Fla. | 200 doz.<br>5-string | 4/7 | 5.90 5% commission included |
| A. Becker & Co.<br>Boston, Mass. | 403 doz.<br>5-string | 4/11 | 5.25 less 5% discount |
| A. Becker & Co.<br>Boston, Mass. | 500 doz.<br>5-string | 4/16 | 5.25 less 5% discount |
| Rex Products Co.<br>Miami, Fla. | -------- | 5/16 | ---less 5% discount |
| Circle F. Distributing Co.<br>Lakeland, Fla. | 300 doz.<br>5-string | 5/17 | 5.25 |
| A. Becker & Co.<br>Boston, Mass. | 247 doz.<br>5-string | 5/19 | 5.25 less 5% discount |
| A. Becker & Co.<br>Boston, Mass. | 250 doz.<br>5-string | 5/25 | 5.25 less 5% discount |
| A. Becker & Co.<br>Boston, Mass. | 221 doz.<br>5-string | 5/26 | 5.25 less 5% discount |
| A. Becker & Co.<br>Boston, Mass. | 379 doz.<br>5-string | 5/31 | 5.25 less 5% discount |
| Alfred Hobson<br>Miami, Fla. | 100 doz.<br>5-string | 6/12 | 5.90 |
| Herman Turman<br>Philadelphia, Pa. | 100 doz.<br>5-string | 6/18 | 5.90 |
| East Coast Fisheries<br>Miami, Fla. | 5 doz.<br>light 5-string | 7/28 | 5.50 |
| " | 5 doz.<br>special 5-string | " | 6.00 |
| Gondrand Shipping Co.<br>Tampa, Fla. | 298 doz.<br>5-string | 8/27 | 5.60 |

On this record, the court is required to determine the value of the merchandise, in accordance with section 402 of the Tariff Act of 1930.

Under that section, the basis for determining value is ordinarily the foreign value or the export value, whichever is higher. Foreign value is defined as the market value or the price at the time of exportation to the United States, at which such or similar merchandise is freely offered for sale to all purchasers for home consumption, in the usual wholesale quantities and in the ordinary course of trade. Since the only evidence before me indicates that the merchandise sold for exportation to the United States was of a higher quality than that sold in Cuba for home consumption, no foreign value can be found.

Export value is defined as follows:

SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Since this is an appeal by the collector, the Government has the burden not only of overcoming the presumption of correctness attaching to the appraiser's valuation, but also of proving the correct and different value upon which it relies as a ground of recovery. *United States* v. *M. V. Jenkins et al.*, 39 C. C. P. A. (Customs) 158, 161, C. A. D. 479; *H. S. Dorf & Co., Inc.* v. *United States*, 41 C. C. P. A. (Customs) 183, 189, C. A. D. 548. To do this, it must meet every material issue in the case, and, if it fails, the value found by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, 41, C. A. D. 495; *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, 166, C. A. D. 513. The issues include the establishment of the price at which the merchandise is freely offered for sale to all purchasers, not that at which it is offered to the greater number of purchasers or those of a particular class or those with greater bargaining ability. *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129; *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308.

In the instant case, there is insufficient evidence to establish any price at which the merchandise was freely offered to *all* purchasers in the usual wholesale quantities. According to statements of Treasury Representative Dillon, the merchandise was freely offered to all purchasers, without any restrictions regarding the quantity purchased or the class of buyer, but the prices were arrived at through

bargaining. The list of sales given in the report supports this statement. The quantity purchased had nothing to do with the price charged. For instance, while the price of $5.90 per dozen was charged some customers for quantities, varying from 100 dozen to 400 dozen, during the same period, the price of $5.25 per dozen, less 5 per centum discount, was charged other customers for quantities varying from 221 dozen to 500 dozen. Nor do the prices reflect a fluctuating market, since different prices were charged at about the same dates. In some cases, a discount was allowed and, in other cases, a commission was included in the price. It is evident, therefore, that the variation in prices was due to the bargaining ability of the purchaser. In *United States* v. *Mexican Products Co.*, *supra*, where the merchandise was sold at varying discounts, depending upon the status of the purchaser or his bargaining ability, it was held that, although the major portion of the sales was made at list prices, less discounts, the merchandise was not freely offered to all purchasers at other than the list prices. The list prices were held to be the dutiable value. In the instant case, however, there are no list prices, and there is no statement in the report of any price at which the merchandise was freely offered for sale to *all* purchasers. The Government claims that the overall picture demonstrates that all purchasers could buy at $5.90 per dozen, but the record does not sustain this position. It shows five sales at that price (two including a commission), a number of sales at lower prices, some sales at a discount, and a number of sales at unknown prices. This is not convincing evidence that all purchasers could buy at $5.90 per dozen; it indicates rather that all prices were arrived at by bargaining. There is no authority for holding that, where prices differ, the highest price should be considered the price at which the merchandise is freely offered for sale to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade. *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, 39, C. A. D. 341.

On the record presented, the Government has failed to meet its burden of establishing the price at which the merchandise was freely offered for sale to all purchasers for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade. The value found by the appraiser, which is presumptively correct, must be affirmed.

Accordingly, I find as matters of fact:

1. That the merchandise involved herein consists of 300 dozen 5-string corn brooms, exported from Cuba on or about May 12, 1945, invoiced, entered, and appraised at $5.25 per dozen.

2. That such or similar merchandise was not offered for sale or sold for home consumption in Cuba at or about the date of exportation herein.

3. That the principal market in the country of exportation is Havana, Cuba.

4. That the record does not establish the price at which such or similar merchandise was freely offered for sale to all purchasers for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade.

I conclude as matters of law:

1. That, at the time of exportation of this merchandise, there was no foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2. That the evidence presented is insufficient to overcome the presumption of correctness attaching to the value found by the appraiser.

3. That export value, as that value is defined in section 402 (d) of said tariff act, is the proper basis for the determination of the value of the within merchandise.

4. That such value is the appraised value.

Judgment will be rendered accordingly.