(Reap. Dec. 10838)

PHILIPP BROS. CHEMICALS, INC. v. UNITED STATES

Entry No. 716242.

(Decided November 4, 1964)

*Eugene R. Pickrell* (*Murray Sklaroff* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of the value of certain sodium peroxide, exported from Germany on or about July 15, 1953, and entered at the port of New York.

The involved merchandise was appraised on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended, at DM177 per hundred kilos, net, less 2 percent, plus drums at DM45 each. It was entered at the invoice price, less nondutiable charges of 10.758 cents per pound, as representing export value (section 402(d) of the Tariff Act of 1930).

The merchandise in question was manufactured and sold to the plaintiff by Deutsche Gold-und Silber-Scheideanstalt Vormals Roessler (hereinafter called "Degussa"), Frankfurt on the Main, Federal Republic of Germany.

No oral testimony was introduced at the time of trial. The evidence in the case consists of certain affidavits introduced in evidence by the plaintiff and a report of a United States vice consul received in evidence on behalf of the defendant. Plaintiff's collective exhibit 1 is an affidavit by Friedrich Wilhelm Schmidt, sales manager for Degussa in the sale of sodium peroxide for export to the United States during the period from January 1, 1952, to August 28, 1957, and a list of such sales of sodium peroxide for export to the United States during that period. Plaintiff's collective exhibit 2 is an affidavit by Rudolph Mihm, sales manager for Degussa in the sale of sodium peroxide for home consumption in Germany during the period from

January 1, 1952, to August 23, 1957, and a list of such sales of sodium peroxide for home consumption in Germany during that period. Plaintiff's exhibit 3 is an affidavit of Friedrich Wilhelm Schmidt, sales manager for Degussa in the sale of sodium peroxide for home consumption in Germany and for export to the United States during the period January 1, 1952, to August 28, 1957. Defendant's collective exhibit A is a letter, dated September 10, 1953, addressed to the United States Department of State, Washington, D.C., by the American consulate general, Frankfurt on the Main, Germany, setting forth a report by William Arthur Helseth, vice consul, of a visit made on August 19, 1953, by the latter officer to the main offices of Degussa relative to sales of sodium peroxide by Degussa for home consumption in Germany and for export to the United States. The above documents will be hereinafter referred to as the determination of the issue in this case requires.

A stipulation entered into by counsel for the respective parties reads in part as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the Plaintiff herein and the Assistant Attorney General for the United States, defendant, subject to the approval of the Court:

1. That the stipulation heretofore filed with the Court on October 2, 1962, dated September 21, 1962, and marked "So Ordered" by Judge David J. Wilson on October 4, 1962 be withdrawn.

2. If foreign value is the proper basis of appraisement, the appraised value of the involved Sodium Peroxide represents such statutory foreign value as defined in Section 402(c) of the Tariff Act of 1930, as amended, by the Customs Simplification Act of 1938.

3. If the Court finds that neither statutory foreign value nor export value exist for such merchandise then the U.S. value as defined in Section 402(e) of said Act is the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed, ready for delivery, in the principal market of the United States to all purchasers at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, and with allowance for profit and general expenses in an amount not exceeding the statutory maximum and that such price is $0.129245 per pound.

\* \* \* \* \* \* \*

5. The appeal for reappraisement may be submitted on this stipulation. \* \* \*

The pertinent statutes herein involved are as follows:

Section 402(c) of the Tariff Act of 1930, as amended:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of

trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (d) of the Tariff Act of 1930:

(d)  EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (e) of the Tariff Act of 1930, as amended:

(e)  UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Plaintiff in this appeal contends that the merchandise here involved was improperly appraised on the basis of foreign value, maintaining that there was no foreign value for the sodium peroxide in question at or about the time of exportation of the merchandise inasmuch as such merchandise was not freely sold or offered for sale to all purchasers at a uniform price, but that the merchandise was sold by bargaining with the purchasers; further, that there was no export value for the merchandise because there was an "exclusive purchasing and selling agreement entered into by the exporter and the importer" (plaintiff's brief, page 2). The plaintiff specifically contends that the proper basis of appraisement was United States value.

In support of its claim that there was no foreign value for the involved goods, plaintiff in this case relies mainly upon the statements contained in plaintiff's collective exhibit 2, *supra*, together with the list of sales attached thereto and made a part of said exhibit.

The question here for determination is as to the value of the merchandise on or about the date of exportation.

With reference to the contentions here advanced by the plaintiff, I am of the opinion, firstly, that there was no export value for the merchandise under consideration. The record in the case at bar dis-

closes that the manufacturer, Degussa, sold sodium peroxide normal grade only to Philipp Bros. Chemicals, Inc., New York City, "with which concern said Degussa had a written exclusive sales agreement covering Sodium Peroxide normal grade for export to the United States" (plaintiff's collective exhibit 1, paragraph 5). Specific reference to said exclusive agreement is found in paragraph 2 of a copy of a letter addressed to the importer herein from the manufacturer, which document is a part of plaintiff's collective exhibit 1. This existence of an exclusive purchasing and selling agreement between the exporter of the involved merchandise and the plaintiff in this case in the sale of sodium peroxide negatives a finding of export value for the importation at bar, and I so find.

With respect to whether or not there was a foreign value for the imported merchandise, a list of sales (made a part of plaintiff's collective exhibit 2) discloses that a quantity of 8,250 kilos was sold on February 22, 1952, for home consumption at a price of DM130 per hundred kilos, while a quantity of only 1,050 kilos, approximately eight times less than the quantity in the sale of the 8,250 kilos above mentioned, was sold on September 23, 1952, at the same price of DM130 per hundred kilos. The record further indicates that, in the year 1953, 824 kilos of merchandise such as here involved was sold to a purchaser on March 27, 1953, at a price of DM148 per hundred kilos, while another customer paid for the purchase of 8,258 kilos on May 15, 1953, a lesser amount in the sum of DM130 per hundred kilos. It further appears from the list of sales above referred to that, during the calendar year 1954, a sale was made on March 31, 1954, of 840 kilos at a price of DM136 per hundred kilos, while a sale in a quantity of 10,880 kilos was made on May 25, 1954, at a slightly lower price of DM130 per hundred kilos. Other sales in the price list heretofore referred to indicate a similar variation in prices, showing sales of approximately the same quantity of merchandise on approximately the same date, but at varying prices, as well as sales covering different quantities but at the same price unit to the buyer. Defendant's collective exhibit A contains a statement to the effect that prices for merchandise such as here under consideration were dependent on the quantity purchased. There is a statement to the contrary made by the affiant, Mr. Rudolf Mihm, in paragraph 6 of plaintiff's collective exhibit 2. In my opinion, there is no substantial evidence in the record to support a finding that the price for the merchandise at bar was dependent on the quantity purchased. A fair interpretation of the record as above disclosed indicates, in my opinion, that prices in the sales of sodium peroxide by the manufacturer for home consumption were not uniform but varied and were due to the bargaining ability

of the purchaser, and that, accordingly, there was no one price at which the merchandise was sold for home consumption. The record, therefore, fails to establish any price at which merchandise such as here involved was freely offered or sold to all purchasers for home consumption in Germany in the usual wholesale quantities. Accordingly, the record in this case fails to establish a foreign value for the imported merchandise, *United States* v. *M. V. Jenkins et al.*, 24 Cust. Ct. 517, Reap. Dec. 7774; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129; *United States* v. *D. Hauser*, 34 Cust. Ct. 517, Reap. Dec. 8451; *Philipp Brothers Chemicals, Inc.* v. *United States*, 43 Cust. Ct. 523, Reap. Dec. 9532. Furthermore, evidence in this case is lacking to establish that other manufacturers of sodium peroxide freely offered or sold the product for home consumption to all purchasers in the principal market of the country from which exported, thus precluding a finding of foreign value for "similar" merchandise.

Pursuant to the stipulation heretofore referred to, the parties to this controversy have agreed that "If the court finds that neither statutory foreign value nor export value exist for such merchandise then the U.S. value as defined in Section 402(e) of said Act" is the proper basis of appraisement and that such value for the involved merchandise was $0.129245 per pound.

On the basis of the record presented, I find as facts:

1. That the merchandise under consideration consists of certain sodium peroxide, exported from Germany on or about July 15, 1953.

2. That, on or about the date of exportation of the involved merchandise, such or similar merchandise was not freely offered for sale and sold for home consumption to all purchasers in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade.

3. That the evidence of record fails to establish an export value (section 402(d) of the Tariff Act of 1930) for the involved merchandise.

4. That United States value (section 402(e) of the Tariff Act of 1930, as amended), is the proper basis for the determination of the value of the merchandise here involved.

I conclude as matters of law:

1. That United States value, as that value is defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the involved merchandise, and

2. That such value for the merchandise in question was $0.129245 per pound.

Judgment will issue accordingly.