(A.R.D. 208)

UNITED STATES *v.* PHILIPP BROS. CHEMICALS, INC.

Entry No. 716242.

Second Division, Appellate Term

(Decided April 20, 1966)

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*Eugene R. Pickrell; Barnes, Richardson & Colburn* (*Norman C. Schwartz* and *Thomas Brian Ketchum* of counsel), associate counsel; for the appellee.

Before RAO and FORD, Judges

RAO, Chief Judge: The United States, as appellant herein, invokes the jurisdiction of this court sitting as a division to review the decision of a single judge in reappraisement proceedings which was reported in *Philipp Bros. Chemicals, Inc.* v. *United States*, 53 Cust. Ct. 459, Reap. Dec. 10838.

Certain sodium peroxide exported from Germany was entered for consumption at the port of New York at the invoice price, less nondutiable charges of 10.758 cents per pound, on the basis of export value, as that value is defined in section 402(d) of the basic Tariff Act

of 1930, prior to the amendment of said section by the Customs Simplification Act of 1956 (70 Stat. 943).

Appraisement of the merchandise was made on the basis of foreign value, as defined in section 402(c) of said tariff act, as amended by the Customs Administrative Act of 1938 (52 Stat. 1077), at DM177 per hundred kilos, net, less 2 percent, plus drums at DM45 each.

Plaintiff below (appellee here) succeeded in convincing the trial court that United States value, as that value is defined in section 402(e) of the Tariff Act of 1930, as amended by the Customs Administrative Act, *supra*, was the proper basis of appraisement and that such value for the merchandise in issue was $0.129245 per pound.

As the grounds of its application for review of the decision of the single judge, the United States-appellant lists four assignments of error, contending that the court erred—

1. In finding and holding that on or about the date of exportation of the involved merchandise, such or similar merchandise was not freely offered for sale and sold for home consumption to all purchasers in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade, and in not finding and holding to the contrary.

2. In not finding and holding that the importer has failed to meet the burden of proof thrust upon it by law in failing to prove affirmatively by competent evidence the absence of an export value, as defined in section 402(d) of the Tariff Act of 1930.

3. In finding and holding that United States value, as defined in section 402(e) of the Tariff Act of 1930, was the proper basis for the determination of value for the involved merchandise contrary to the facts and the law.

4. In not finding and holding that the importer has failed to overcome the presumption of correctness and in not affirming the appraised value as the correct dutiable value of the involved merchandise.

Said assignments will be considered *seriatim*.

The manufacturer and seller of the subject merchandise was Deutsche Gold-und Silber-Scheideanstalt Vormals Roessler of Frankfort on the Main, Federal Republic of Germany, which company will be hereinafter referred to as "Degussa."

The record before the court includes the following documentary exhibits:

Plaintiff's collective exhibit 1—affidavit of Friedrich Wilhelm Schmidt, in charge of sales for exportation to the United States of sodium peroxide produced by Degussa.

Plaintiff's collective exhibit 2—affidavit of Rudolph Mihm, in charge of sales for home consumption in the Federal Republic of Germany of peroxygen products including sodium peroxide produced by Degussa.

Plaintiff's exhibit 3—affidavit of Friedrich Wilhelm Schmidt in his capacity as general manager of sales for Degussa both for home consumption in Germany and for exportation to the United States, stating that, after perusing the affidavits offered in evidence as exhibits 1 and 2, *supra*, he deposes that the facts stated therein are true and correct.

Defendant's collective exhibit A—report covering customs value inquiry supplied by William A. Helseth, Vice Consul of the United States at Frankfort on the Main, Germany, to the Commissioner of Customs, Washington, D.C. Exhibits 1, 2, and A are accompanied by various listings, invoices, and other data. Certain of said attachments, which are presented in the English language, will be adverted to, *infra*. Others of said attachments, being in the German language without translation, possess no evidentiary value.

In addition to the foregoing exhibits received in evidence, the parties hereto entered into a written stipulation of fact, certain pertinent portions of which are here set forth—

If foreign value is the proper basis of appraisement, the appraised value of the involved Sodium Peroxide represents such statutory foreign value as defined in Section 402(c) of the Tariff Act of 1930, as amended, by the Customs Simplification Act of 1938 [sic].

If the Court finds that neither statutory foreign value nor export value exist for such merchandise then the U.S. value as defined in Section 402(e) of said Act is the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed, ready for delivery, in the principal market of the United States to all purchasers at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, and with allowance for profit and general expenses in an amount not exceeding the statutory maximum and that such price is $0.129245 per pound.

The statutory provision for foreign value, invoked at the time of appraisement of the instant merchandise, reads as follows:

Section 402(c) of the Tariff Act of 1930, as amended:

(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The first consideration is whether there existed at the time of importation of the instant merchandise a foreign market value for "such"

sodium peroxide. From the affidavit of Rudolph Mihm, in evidence as plaintiff's collective exhibit 2, referred to, *supra*, we are informed—

That Sodium Peroxide is sold for home consumption in Germany in different grades, namely

1) in normal grade for bleaching purposes and to large scale producers of chemicals;
2) in special grades, indicated "clearly soluble", "purest" and "dust form", which are mainly used for analytical purposes.

The grades under point 2) are manufactured by a separate process from very pure raw material and are thus much more expensive than the normal grade. Since we shipped to the U.S.A. the normal grade according to point 1) only, we can exclude the sales effected in the special grades according to point 2).

The normal grade of Sodium Peroxide cannot be used in place of the special grades for the following reasons: The normal grade is not pure enough to meet analytical specifications neither is it clearly soluble nor in dust form. Vice versa nobody would use the special grades for bleaching purposes or the large scale production of chemicals as the prices of the special grades are prohibitive for these applications, the special grades being manufactured by a separate process and from very pure raw materials as described in subparagraph 2 of this paragraph.

Sodium Peroxide is a product which is not suitable for wholesale purposes in as far as it is, in many respects, dangerous and therefore not suited for putting in store by wholesalers. If Sodium Peroxide comes into contact with organic substances and water, it might cause fire. It further effects an irritation to the skin.

The "normal" grade sodium peroxide is the kind of merchandise with which we are here concerned.

The trial court was of the opinion that there was no uniform price at which such sodium peroxide was sold for home consumption and that sales were not predicated on the quantity purchased, but that the price for such merchandise varied according to the bargaining ability of the purchaser.

The appellant, in an attempt to overcome said finding, endeavors to support the position that, predicated on the listing of sales, appended to plaintiff's collective exhibit 2, it appears that at or about the time of the instant importation 70 kilos represented the major portion of sales in wholesale quantities and that such a quantity was sold at DM200 per hundred kilos. In support of its position the United States cites the case of *M. V. Jenkins et al.* v. *United States*, 34 CCPA 33, C.A.D. 341, and quotes therefrom as follows—

It is well established that the usual wholesale quantity is determined by the greatest number of sales in wholesale quantities. See *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912, and cases therein cited.

The principle of "usual wholesale quantity" referred to in the *Jenkins* case, *supra*, which we concede is well established, has been consistently followed and is of controlling effect but only when the other requisites of foreign value provided for in section 402(c) have been met, among which are the establishment of a market value or price at which such merchandise is freely offered for sale for home consumption to all purchasers.

Although there was a pricelist in existence for the instant merchandise, the affidavit of Rudolph Mihm (plaintiff's collective exhibit 2) states that said document was "an office price list to be used as a reference in bargaining with customers," and that "the price list was not published or distributed to possible purchasers." The private nature of such a document which deprives it of its evidentiary value in reappraisement proceedings is corroborated in defendant's collective exhibit A where, in referring to such a pricelist, it is stated that it "was issued for office purposes only."

In the case at bar, we are convinced from the evidence before the court, as was the trial judge, that prices were established on the basis of bargaining and that there was no uniform price at which Degussa sold sodium peroxide of the kind here involved to all purchasers. This fact we deem to be adequately supported by the uncontradicted affidavit of Rudolph Mihm and the accompanying lists of sales of such merchandise. In the circumstances, therefore, we conclude that at the time of the instant importation there was no foreign value for such merchandise as is here involved.

Although the record discloses that sodium peroxide is sold for home consumption in Germany in different grades, namely, in the normal grade for bleaching purposes and in special grades mainly for analytical purposes, said grades, by virtue of their different characteristics, individual specifications and uses cannot be considered to be "similar" merchandise for appraisement purposes within the purview of section 402 of the Tariff Act of 1930, as amended. Coupled with that fact, we have the statement of Rudolph Mihm which stands unrefuted—

That upon information and belief, based upon 20 years of experience in the offers for sale and sales of Sodium Peroxide for home consumption in the Federal Republic of Germany, Sodium Peroxide was neither produced nor sold during said period for home consumption in the Federal Republic of Germany by concerns other than said DEGUSSA.

Since we are of the opinion that the special grades of sodium peroxide produced by Degussa are not similar to the normal grade for appraisement purposes and the further fact that there was no other producer of sodium peroxide in Germany at or about the time of the instant importation, it follows that a foreign value for similar merchandise did not exist.

The second assignment of error raised by appellant is that plaintiff below failed to prove affirmatively, by competent evidence, that there was no export value, as defined in section 402(d) of the Tariff Act of 1930.

In this regard, let us look to the affidavit of Friedrich Wilhelm Schmidt, in evidence as plaintiff's collective exhibit 1, wherein it is disclosed that Degussa had a written sales agreement with Philipp Bros. Chemicals, Inc., of New York City, whereby said corporation was appointed exclusive and sole distributor in the United States of normal grade sodium peroxide. This statement, which stands uncontradicted, is corroborated by a photostatic copy of the exclusive sales agreement which is attached to said exhibit 1.

An exclusive agreement limiting sales for exportation to the United States to one purchaser in this country prevents a holding that an export value existed since section 402(d) defines export value as that market value or price at which such or similar merchandise is *freely offered for sale to all purchasers. United States v. Malhame & Co.,* 24 CCPA 448, T.D. 48911.

Having found the nonexistence of a foreign or export value for the merchandise in issue, we believe appellant's third assignment of error finds a ready answer in the language of the stipulation entered into by the parties wherein it was agreed that—

If the Court finds that neither statutory foreign value nor export value exist[s] for such merchandise then the U.S. value as defined in Section 402(e) of said Act is the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed, ready for delivery, in the principal market of the United States to all purchasers at the time of exportation of the imported merchandise, * * * and that such price is $0.129245 per pound.

Inasmuch as we have found, *supra*, that the record evidence negatives a holding of foreign value for the instant merchandise, appellant's fourth assignment of error that the presumption of correctness attaching to the appraised value has not been overcome is untenable.

On the record before the court, we find as facts—

1. The merchandise at bar consists of normal grade sodium peroxide, exported from Germany and manufactured by a firm doing business as "Degussa."

2. Said merchandise was appraised on the basis of foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended.

3. On or about the date of exportation of the instant merchandise such or similar merchandise was not freely offered for sale or sold for home consumption in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade.

4. On or about the date of exportation such or similar merchandise was not freely offered for sale or sold to all purchasers for exportation to the United States since an exclusive agreement existed limiting sales by Degussa to the importer herein.

5. On or about the date of exportation such or similar imported merchandise was freely offered for sale for domestic consumption in the principal market of the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade with an allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, with profit and general expenses not exceeding the statutory maximum. at the price of $0.129245 per pound, net, packed.

The court holds as matters of law—

1. That United States value, as that value is defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for determining the value of the merchandise at bar, and

2. That such value for said merchandise was $0.129245 per pound, net, packed.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be entered accordingly.