(Reap. Dec. 9107)

H. MUEHLSTEIN & Co. v. UNITED STATES

Entry No. 772747–1/3.

(Decided March 21, 1958)

*Sharretts, Paley & Carter* (*Donald W. Paley, Howard Clare Carter,* and *Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the value of certain ebonite or hard rubber dust, exported from England on or about November 20, 1951.

Two grades of ebonite dust were involved in the shipment, one denominated 70/30S, made from natural crude rubber and sulphur, and the other No. 3, made from high-grade natural scrap rubber and sulphur.

Grade 70/30S was entered at a unit price of 3 shillings 10 pence per pound, plus packing, as invoiced, and was appraised at 4 shillings per pound, plus packing, as invoiced. Grade No. 3 was entered at a unit price of 2 shillings 3 pence per pound, plus packing, as invoiced, and appraised at 2 shillings 3¾ pence per pound, plus packing, as invoiced.

At the trial, it was stipulated by counsel that the proper basis of value for both grades of the merchandise at bar was foreign value, defined in section 402 (c) of the Tariff Act of 1930, as amended, and that there was no statutory export value for either grade. It was further agreed that the foreign value of grade 70/30S was predicated upon the value of "such" merchandise in the foreign market, while the value of grade No. 3 was predicated upon the value of "similar" merchandise in the foreign market, to wit, merchandise denominated "Prime B."

At the times here pertinent, foreign value was defined in section 402 (c), *supra,* as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is the plaintiff's contention that the price at which merchandise such as or similar to that here in issue was freely offered for sale for home consumption in wholesale quantities varied according to the quantity purchased in one sale. Under this contention, the price

contemplated by the statute would be that applicable to "the usual wholesale quantities." The rule for the determination of the usual wholesale quantities as laid down by our appellate court over a number of years is the so-called "major portion of sales or offers for sale" rule, expressed in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, 44, C. A. D. 495, as follows:

> This court has established that the language "in the usual wholesale quantities," as used in section 402, *supra*, refers to that particular wholesale quantity which constitutes the "major portion of sales or offers for sale" in wholesale quantities. * * *

Plaintiff's evidence is in the form of an affidavit by one W. C. Martin, who describes himself therein as a director of the manufacturing and exporting firm. It appears that he had been associated with the firm for 43 years, and his familiarity with the sale of its products is set forth in the affidavit and demonstrates his competency to make the statements therein.

The affidavit was received in evidence as plaintiff's exhibit 1 over the objection of counsel for the defendant that the "contents * * * call for conclusions of law and self-serving declarations." This objection was overruled.

It appears from the record that the present case is in the nature of a test case and that other cases involving other importations of merchandise presumably the same, except for date of exportation, were suspended to await the outcome of the present case. It is probably in part for this reason that plaintiff's exhibit 1 contains a list of all sales (with certain exceptions to be discussed, *infra*) of grades 70/30S and Prime B made for home consumption in England on which deliveries were made during the period from January 1, 1951, to March 24, 1955.

Counsel for the plaintiff has, in the supplemental brief filed in its behalf, analyzed all of the sales on which deliveries were made during that period with the purpose of determining "that particular wholesale quantity which constitutes the 'major portion of sales or offers for sale' in wholesale quantities" (*Brooks* v. *United States, supra*).

It must be remembered that the exportation which gave rise to the present case occurrred on or about November 20, 1951. The writer has done a considerable amount of research in connection with the cases in which the "major portion of sales or offers for sale" rule was invoked, but fails to find any which by result or by judicial expression has indicated the length of the period during which sales or offers for sale in wholesale quantities are to be examined in order to determine "that particular wholesale quantity which constitutes the 'major portion of sales or offers for sale' in wholesale quantities."

Presumably, such a period should cover a length of time which would tend to indicate with reasonable certainty that quantity which was involved in the major portion of sales or offers for sale in wholesale quantities. With this observation in mind, examination of plaintiff's exhibit 1 and the schedules of sales attached to it reveals the following:

Schedule A, attached to plaintiff's exhibit 1, contains a list of all sales of grade 70/30S ebonite dust made for home consumption in England on which deliveries were made during the period from January 1, 1951, to March 24, 1955. A similar list, denominated schedule B, covers all sales of Prime B during the same period.

Excepted from the lists were sales made of quantities of 5 to 30 pounds sold for testing purposes. Inasmuch as the articles at bar are by their nature obviously manufactured and designed to be sold to consumers who use them in manufacturing applications, it seems clear that sales for testing purposes were not in the ordinary course of trade and should not be considered in determining the usual wholesale quantity under the major portion of sales or offers for sale rule.

The quantities sold and delivered in each sale as listed in schedules A and B are expressed in hundredweights (112 lbs.), quarters (28 lbs.), and pounds. While no *single* quantity so expressed stands out so that it might clearly be denominated that *particular* wholesale quantity in which the *major* portion of sales were effected, it does appear that sales tended to group themselves in ranges of units, tens, twenties, etc., of hundredweights.

To explain that last statement, it should be said that of the 239 sales listed in schedule A of grade 70/30S sold and delivered during the entire period from January 1, 1951, to March 24, 1955, the quantity of 20 cwt. 1 qtr. 0 lbs. was the *single* quantity in which more sales were made than in any other quantity, the sales of that quantity being 10 out of the 239 sales listed. The sales and deliveries by ranges of quantities were as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs | | | | | | | 43 sales |
| 10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs | | | | | | | 15 " |
| 20 " | " | 29 " | 3 " | 27 " | | | 97 " |
| 30 " | " | 39 " | 3 " | 27 " | | | 4 " |
| 40 " | " | 49 " | 3 " | 27 " | | | 46 " |
| 50 " | " | 59 " | 3 " | 27 " | | | 0 " |
| 60 " | " | 69 " | 3 " | 27 " | | | 9 " |
| 70 " | " | 79 " | 3 " | 27 " | | | 0 " |
| 80 " | and over | | | | | | 25 " |
| | | | | | | | 239 sales |

Quite obviously, the range of quantities in which the major portion of sales was made during the selected period was those quantities of

20 cwt. to 50 cwt. This tends to substantiate the statement of the affiant in plaintiff's exhibit 1 that the quantity of 20 cwt. 0 qtrs. 19 lbs. (apparently an *average* sale quantity and not an *actual* sale quantity) was the quantity in which the greatest number of sales were made.

It is observed that plaintiff's exhibit 1 shows that, during the entire period from January 1, 1951, to March 24, 1955, there were 12 periods during which the prices of the grades of ebonite dust remained stable. One of these periods, which may be denominated "pricing periods," was from September 1, 1951, to February 29, 1952, in which the time of exportation of the involved merchandise, November 20, 1951, falls.

It is interesting to note that in that pricing period there were 26 sales of grade 70/30S, the ranges of quantities sold being as follows:

```
Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs_____ 3 sales
10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs_____ 0  "
20  "        "         29  "  3  "  27  " _____ 7  "
30  "        "         39  "  3  "  27  " _____ 0  "
40  "        "         49  "  3  "  27  " _____ 7  "
50  "        "         59  "  3  "  27  " _____ 0  "
60  "        "         69  "  3  "  27  " _____ 3  "
70  "        "         79  "  3  "  27  " _____ 0  "
80  "  and over_____ 6  "
                                                    ──
                                              26 sales
```

A comparison of the foregoing table with that applicable to the entire period covered by schedule A shows that the same range of usual wholesale quantities obtained during the particular pricing period here involved, September 1, 1951, to February 29, 1952, as obtained for the entire period from January 1, 1951, to March 24, 1955, thus demonstrating that the usual wholesale quantity in which grade 70/30S was sold was 20 cwt. to 50 cwt.

With respect to the 14 sales made in the pricing period from September 1, 1951, to February 29, 1952, in that quantity, the prices per pound and numbers of sales break down as follows:

| Price per pound packing extra | No. of sales |
|---|---|
| 3s. 9½d. | 1 |
| 3s. 10d. | 5 |
| 3s. 10½d. | 3 |
| 3s. 11d. | 5 |
| | ── |
| | 14 sales |

The sale at 3s. 9½d. was made on February 29, 1952, to the same purchaser (No. 5 in schedule A) who previously in the same pricing period had paid 3s. 10½d. for the usual wholesale quantity, and it is obvious that the lower than normal price was made in order to correct

the previous overcharge, so that the price to this purchaser on the two sales made to him in the pricing period averaged 3s. 10d.

The remaining two sales at 3s. 10½d. were made to a customer (No. 15) who, according to the affiant in plaintiff's exhibit 1, "takes excessive credit and is slow in paying his bills." It is clear that the 3s. 10½d. price charged, under such circumstances, is not the value contemplated by the statute, inasmuch as that value is the price when merchandise is sold for cash. In *Arthur* v. *Goddard*, 96 U. S. 145, the Supreme Court said:

> \* \* \* The value means the cash value. The price at thirty days' credit might be different, and the difference would probably be greatly increased by a credit of six months or a year, but the value or cost would still be the same. The difference would be chargeable to the credit, and not to a difference in the value of the goods.

Consequently, the said two sales at 3s. 10½d. must be excluded from consideration in determining the price applicable to the usual whole-sale quantity and, hence, the value of the merchandise.

This leaves for consideration only the five sales (or seven sales, if the sales at 3s. 9½d. and 3s. 10½d. are averaged) at 3s. 10d. and the five sales at 3s. 11d. The latter sales were made to two customers, denominated Nos. 6 and 20.

Plaintiff contends that the sales made to these two customers were not made in the ordinary course of trade. According to the affiant in plaintiff's exhibit 1, customer No. 6—

> \* \* \* was a new customer whom I did not expect to become a large consumer and I felt that a higher price was obtainable from him. When it appeared that he would become a regular customer, I offered and sold the merchandise to him at the same price that was paid by others. \* \* \*

Of customer No. 20, the affiant says that he—

> \* \* \* had been a competitive manufacturer and I assume that he purchased from my company only when he was unable to produce the merchandise in his own factory.

It is apparent that the circumstances of the sales to the two above-mentioned purchasers were not such as ordinarily and generally obtained in the offer and sale of ebonite dust, such as that here involved. The writer is of the opinion that the 3s. 11d. price at which those sales were made, which does not comport with any value claimed by either of the parties, should not be considered as representing the value contemplated by the statute.

Upon the basis of the record, as hereinbefore indicated, the writer is of the opinion that the plaintiff has made out a *prima facie* case in favor of a foreign value for merchandise such as the grade 70/30S ebonite dust here involved of 3s. 10d. per pound, plus packing, and so finds.

With respect to Prime B ebonite dust, schedule B of plaintiff's exhibit 1 lists 221 sales on which deliveries were made during the period from January 1, 1951, to March 24, 1955. An analysis of these sales shows the following ranges of quantities involved:

Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs____ 37 sales
10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs_____ 20 "
20 "      "      29 " 3 " 27 " _____ 42 "
30 "      "      39 " 3 " 27 " _____ 5 "
40 "      "      49 " 3 " 27 " _____ 77 "
50 "      "      59 " 3 " 27 " _____ 0 "
60 "      "      69 " 3 " 27 " _____ 27 "
70 "      "      79 " 3 " 27 " _____ 0 "
80 " and over_____ 13 "
                                                      ____
                                                      221 sales

The foregoing shows that the major portion of sales involved quantities ranging from 20 cwt. to 50 cwt. During the pricing period which covered the present importation, i. e., September 1, 1951, to February 29, 1952, there were 27 sales effected, involving the following ranges of quantities:

Less than 1 cwt. to and including 9 cwt. 3 qtrs. 27 lbs____ 4 sales
10 cwt. to and including 19 cwt. 3 qtrs. 27 lbs_____ 1 "
20 "      "      29 " 3 " 27 " _____ 8 "
30 "      "      39 " 3 " 27 " _____ 0 "
40 "      "      49 " 3 " 27 " _____ 10 "
50 "      "      59 " 3 " 27 " _____ 0 "
60 "      "      69 " 3 " 27 " _____ 3 "
70 "      "      79 " 3 " 27 " _____ 0 "
80 " and over_____ 1 "
                                                      ____
                                                      27

The foregoing corroborates the result of the analysis for the entire period from January 1, 1951, to March 24, 1955, and establishes that the usual wholesale quantity under the major portion of sales rule was 20 cwt. to 50 cwt.

Of the 18 sales made during the pricing period here involved of quantities within the range of the usual wholesale quantity, all but one were made at the price of 2s. 3d. per pound. The single exception was a sale made on February 18, 1952, to customer No. 4 at a price of 2s. 1d. per pound, and, while there is no explanation of the 2d. reduction in price, it would seem that this exception should not control the result.

I, accordingly, find that plaintiff has made out a *prima facie* case in favor of a foreign value for merchandise similar to the ebonite dust here involved, i. e., for Prime B ebonite dust, of 2s. 3d. per pound.

At the conclusion of the case presented by the plaintiff, counsel for the defendant moved to dismiss the appeal for reappraisement, on the ground that the plaintiff had failed to make out a *prima facie* case. The motion was taken under advisement until decision of the case on the merits. Upon consideration of the record, as hereinbefore indicated, the writer is of the opinion that plaintiff has made out a *prima facie* case in favor of its claims, and the motion to dismiss is accordingly denied.

In assuming its burden of going forward with the evidence, defendant offered in evidence the report of a United States assistant appraiser concerning an investigation made by him at the office of the manufacturer and exporter in London, England.

Objection was made by counsel for the plaintiff to that portion of the report which consists of price lists identified in the report as exhibit 1 and consisting of 9 pages attached to the report proper, and it was moved that that portion of the report be stricken on the ground that, as shown by the report, the prices listed therein do not purport to be prices at which such or similar merchandise was freely offered for sale "to all purchasers," but prices at which merchandise was offered for sale individually to each of 19 or 20 customers and, hence, have no probative value in connection with the determination of foreign value which, it was stipulated, was the proper basis of value for the merchandise in question.

The report was admitted in evidence as defendant's exhibit A, subject to the objection and motion, upon which ruling was reserved until the case should be taken up on the merits.

The report and price lists were obviously offered in evidence to support the values returned by the appraiser. Defendant's counsel points to page 2 of the price lists, headed—

EBONITE (HARD RUBBER) DUST QUOTATIONS TAKING EFFECT IN RESPECT OF ALL DELIVERIES ON AND AFTER 1ST, SEPTEMBER, 1951

and specifically to a "quotation" of 4s. per pound opposite the name "Simms Motor Units" for grade 70/30S, and a "quotation" of 2s. 3¾d. per pound opposite the name "J. G. Franklin & Sons" for Prime B ebonite dust, as supporting the values returned by the appraiser.

The affiant in plaintiff's exhibit 1 states that his firm does not and never has issued price lists, and, inasmuch as the assistant appraiser identifies the price lists attached to his report as "office" price lists, it seems clear that, whatever they were, they never circulated in the trade as *bona fide* offers or as invitations to purchase. *Tag Mfrs. Institute et al.* v. *Federal Trade Commission*, 174 F. (2d) 452, 453. There is no evidence offered by the defendant that any sale was effected at either of the prices shown on the list (page 2), identified above,

and, in fact, schedules A and B of plaintiff's exhibit 1 establish that no sales at such prices were effected during the pricing period covering the exportation of the merchandise at bar.

The reappraisement procedural statute, 28 U. S. C. section 2633, provides that price lists "may be admitted in evidence." It is highly questionable whether the lists here in question may be properly denominated "price lists" at all. Presumably the price lists referred to in the statute would be documents which, either by themselves or in connection with other evidence, would establish or tend to establish the price at which merchandise such as or similar to that under appraisement was freely offered for sale to all purchasers. The so-called price lists in question show on their face that they do not refer to prices "to all purchasers," but only to prices to individual, named purchasers.

As is the case with all of the documents specifically permitted to be received in evidence under 28 U. S. C. section 2633, the statute constitutes an exception to the rule excluding hearsay evidence, but it does not dispense with the requirements that such evidence in other respects be competent, material, and relevant. *Downing* v. *United States*, 16 Ct. Cust. Appls. 293, T. D. 42873; *United States* v. *Sabin*, 14 Ct. Cust. Appls. 76, T. D. 41581. I am of the opinion that inasmuch as the so-called price lists are not probative of any material fact under the valuation statute, they are inadmissible in evidence, and so sustain the objection made and grant the motion to strike the same as made at the time of trial.

I observe, however, that even if the so-called price lists were considered to be admissible in evidence, they could be accorded no weight, inasmuch as evidence that they circulated or that sales were made under them is entirely lacking.

The evidentiary matters covered by the report, defendant's exhibit A, excluding the so-called price lists contained in exhibit 1 thereof, are entirely insufficient to rebut the *prima facie* case made out by plaintiff's evidence, as hereinbefore set out.

On the entire record before me, I find as facts:

1. That the merchandise involved in this appeal for reappraisement is ebonite dust in two grades, namely, 70/30S and No. 3, exported from England on or about November 20, 1951.

2. That at or about the time of exportation of the merchandise under appraisement merchandise such as grade 70/30S was freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

3. That at or about the time of exportation of the merchandise under appraisement merchandise such as grade No. 3 was not freely

offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, but that merchandise similar thereto, namely, Prime B ebonite dust, was so freely offered for sale.

4. That at the said time the usual wholesale quantities in which grade 70/30S and Prime B ebonite dust were so freely offered for sale were quantities of 20 cwt. to 50 cwt.

5. That the price, at the said time, at which grade 70/30S was so freely offered for sale was 3 shillings 10 pence per pound, plus packing.

6. That the price, at the said time, at which Prime B ebonite dust was so freely offered for sale was 2 shillings 3 pence per pound, plus packing.

7. That neither such nor similar merchandise was at the said time freely offered for sale to all purchasers for exportation to the United States.

I conclude as matters of law:

1. That foreign value, as defined in section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, 52 Stat. 1081, is the proper basis of value for the merchandise involved, and

2. That such value for grade 70/30S was 3 shillings 10 pence per pound, plus packing, and for grade No. 3 was 2 shillings 3 pence per pound, plus packing.

Judgment will issue accordingly.