(Reap. Dec. 9532)

PHILIPP BROTHERS CHEMICALS, INC. v. UNITED STATES

Entry Nos. 793395; 819639; 705346; 751911.

(Decided November 5, 1959)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

WILSON, Judge: These appeals for reappraisement relate to certain sodium perborate, exported from Germany between June 25, 1953, and December 24, 1953, and entered at the port of New York.

The merchandise was entered at the invoice price, less nondutiable charges, plus an addition to make home market value equal to column 11 on the consular invoice, namely, the unit value of deutsche marks 105 per 100 kilos, packed, tax included, and was appraised on the basis of foreign value of deutsche marks 158 per 100 kilos, net weight, less 2 per centum, plus cost of drums.

Plaintiff contends that there was no foreign value for sodium perborate in Germany at or about the time of exportation of the involved merchandise, inasmuch as such merchandise was not freely sold or offered for sale to all purchasers but was sold by bargaining with the purchaser and that sales to wholesalers were to selected wholesalers with restricted territories. Plaintiff claims that the proper basis of appraisement is export value (section 402(d), Tariff Act of 1930) and that such value is equal to $11.40 per 100 pounds, less ocean freight and insurance.

In support of its claim that there was no foreign value for the involved goods, plaintiff introduced in evidence certain affidavits executed by employees of the manufacturing concern and by an employee of another German manufacturer of sodium perborate relative to sales of the product for home consumption and for export. (Plaintiff's collective exhibits 9, 12, and 15, and plaintiff's exhibit 11.) The defendant introduced in evidence a report, certified by the American Consulate General, Frankfurt, Germany, dated September 11, 1953, together with exhibits attached thereto, relative to sales by the manufacturer herein of sodium perborate for home consumption. (Defendant's collective exhibit A, R. 68.) Said report has attached to it a pricelist, marked "Exhibit 'B'," purportedly valid for the home market since 1951. At page 2, the said report, under the heading "Prices, Terms," states:

\* \* \* This price list was issued only for internal office use in quoting prices.

In my opinion, the aforesaid pricelist is entitled to no weight in determining the proper value of the involved merchandise, inasmuch as it appears that such pricelist was never circulated in the trade as *bona fide* offers or as invitations to purchase. See *H. Muehlstein & Co.* v. *United States*, 40 Cust. Ct. 751, Reap. Dec. 9107. Further, defendant's collective exhibit A itself presents evidence that sales of sodium perborate for home consumption were not made in accordance with the pricelist. A comparison between the prices on the pricelist and the actual sales prices, according to defendant's collective exhibit A (pages 3 and 4), discloses that the highest price on said pricelist is DM 159 per 100 kilos in lots of 1 ton. The résumé of sales of sodium perborate for home consumption in Germany, as given in defendant's collective exhibit A, shows, for the same quantity of 1 ton, 8 sales at DM 165 per 100 kilos, 16 sales at DM 168 (special), and 1

sale per 100 kilos at DM 177. It would appear, therefore, that the prices stated in exhibit B of defendant's collective exhibit A do not truly reflect the prices at which sodium perborate was freely offered to all purchasers for home consumption in Germany.

The Government, in contending for foreign value as the proper basis of appraisement, relies on the list of sales of sodium perborate for home consumption, as given under the heading "Usual Wholesale Quantities" in defendant's collective exhibit A, covering the manufacturer's records over a 20-month period, from January 1952 to August 1953. The list reveals that some 29 sales were made in quantities of 5 tons, which quantity represented the major portion of sales for the indicated period. The indicated list price for 21 such sales, with normal packing, is shown as DM 158, which the defendant maintains represents the freely offered and sold price of the merchandise in the usual wholesale quantities. However, the list in question has little or no weight in determining the proper value of the importation at bar, inasmuch as it has not been established that the sales of sodium perborate indicated therein were made at or about the time of exportation of the involved merchandise, viz, between June 25 and December 24, 1953.

In my opinion, the record in this case supports plaintiff's contention that there was no foreign value for the imported merchandise. Plaintiff's collective exhibit 9, an affidavit executed by Rudolf Mihm, sales manager for the manufacturer, hereinafter referred to as Degussa, has attached thereto (paragraphs 7 and 8) a list of sales of sodium perborate for home consumption. The aforesaid list indicates that some 323 sales were made in Germany for home consumption during the last 6 months of 1953 to consumers and wholesalers. A review of such sales shows that different or varied prices were charged on or about the same dates for approximately the same quantity of merchandise, it further appearing that the same unit prices were at times charged for different quantities of merchandise. There are other sales indicated in the said list of similar import, showing sales of approximately the same quantity of merchandise on approximately the same date, but at varying prices, as well as sales covering different quantities, but at the same unit price to the buyer. In the latter connection, the sales list (plaintiff's collective exhibit 9, paragraph 7) shows a delivered price of DM 147 per 100 kilos for 400 kilos on December 29, 1953, and a delivered price of DM 145 per 100 kilos for 6,000 kilos on December 30, 1953. Both purchasers were consumers. Allowing for sales prices, less freight, Degussa received on the indicated sale of 400 kilos DM 127.45 per 100 kilos. On the sale of 6,000 kilos, Degussa received DM 142.10 per 100 kilos. In my opinion, such a record establishes that the purchaser of the 400 kilos in question

found a more favorable status than did the buyer of the 6,000 kilos, indicating greater bargaining ability in the purchase of the merchandise. It appears evident that the variation in prices on sales for home consumption was due to the bargaining ability of the purchaser. The record, therefore, fails to establish any price at which the involved merchandise was freely offered or sold to all purchasers for home consumption in Germany in the usual wholesale quantities. Such a factual situation as is here indicated negatives a finding of foreign value for the merchandise. *United States* v. *Jenkins et al.*, 24 Cust. Ct. 517, Reap. Dec. 7774; *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129; *United States* v. *D. Hauser*, 34 Cust. Ct. 517, Reap. Dec. 8451. Likewise, evidence is lacking to establish that other manufacturers of sodium perborate freely offered or sold the product for home consumption to all purchasers in the principal markets of the country from which exported, thus precluding a finding of foreign value for "similar" merchandise.

With reference to a claimed "export" value for the merchandise, the record discloses that the merchandise in question was ordered by the plaintiff from the manufacturer, but was shipped and invoiced to Terra Chemicals, Inc., of New York, the exporter's agent in the United States. Payment for the goods was made by plaintiff to the Terra Chemicals, Inc., company, which, after deducting certain amounts in each case for so-called commission and expenses, remitted the balance to the manufacturer to cover the cost of the goods. The defendant maintains that Terra Chemicals, Inc., was the exclusive purchaser of sodium perborate from the manufacturer, and that, accordingly, the exporter herein did not freely offer the merchandise to all purchasers in the United States, thus negativing a finding of export value for the goods. Pertinent in the present determination, is the testimony of plaintiff's witnesses and certain documentary evidence, hereinafter referred to, particularly, the record of sales of sodium perborate made by the manufacturer herein to purchasers in the United States.

Two witnesses testified on behalf of the plaintiff. Charles H. Bendheim, secretary and treasurer of the plaintiff corporation, whose duties involved the purchase of sodium perborate, including the importations at bar, testified that his company purchased the involved merchandise while it was in transit "having originally been a sale from Degussa direct to the Terra Chemical Company" (R. 11–12). A copy of a purchase order from Philipp Brothers Chemicals, Inc., to Degussa, dated November 2, 1953, a letter of confirmation from Degussa to Philipp Brothers Chemicals, Inc., dated November 6, 1953, and an invoice (number 2299) from Terra Chemicals, Inc., to the plaintiff relative to the importation involved in reappraisement 263578–A herein (entry No. 793395) of November 24, 1953, were re-

ceived in evidence as plaintiff's collective exhibit 1. Plaintiff also introduced in evidence the consular invoice in entry No. 793395, *supra*, dated November 12, 1953, showing Terra Chemicals, Inc., as the purchaser of the involved merchandise, together with a letter, dated November 19, 1953, from Terra Chemicals, Inc., addressed to the collector of customs at New York, indicating that Terra Chemicals, Inc., sold the merchandise in question to Philipp Brothers Chemicals, Inc. (plaintiff's collective exhibit 2 (R. 15)). Similar purchase orders from the plaintiff to the manufacturer, confirmations, consular invoices covering the importations, and invoices from Terra Chemicals, Inc., to Philipp Brothers Chemicals, Inc., relative to the goods were received in evidence as plaintiff's collective exhibits 3, 4, 5, 6, 7, and 8 (R. 18–25). In this connection, Mr. Bendheim testified that he sent the purchase orders to both Terra Chemicals, Inc., and Degussa. The witness stated that the plaintiff did not have an exclusive purchasing agreement with Degussa for sodium perborate (R. 7), nor did he first inquire of Terra Chemicals, Inc., whether he could purchase sodium perborate from the manufacturer (R. 31), explaining that such purchases were arranged by sending a purchase order to Degussa, with a copy of same to Terra Chemicals, Inc., and that "That is the way Degussa wanted it handled." (R. 33.) Mr. Bendheim further testified that the plaintiff never made a direct purchase from Degussa except through Terra Chemicals, Inc., during the involved period (R. 33).

It appears that the consular invoices covering the involved merchandise (plaintiff's collective exhibits 2, 3, 5, and 6) show Terra Chemicals, Inc., as the purchaser of the goods, whereas the purchase orders covering the importations at bar show that those purchase orders were placed by the plaintiff with Degussa, it further appearing in the record that confirmations of the orders were received from the manufacturer by the plaintiff. In explanation of this apparent conflict, plaintiff's witness, Ferdinand A. Kertess, president and owner of Terra Chemicals, Inc., testified that Degussa had made arrangements to have Terra Chemicals, Inc., act as its agent on shipments to the United States and to pay the latter firm the office expenses and commissions for transacting the business of the exporter in this country, and that, even if a purchase order were sent directly to the exporter, Degussa, the shipment would come forward with the invoice to the exporter's agent, Terra Chemicals, Inc. (R. 50, 51).

The record discloses that the plaintiff paid Terra Chemicals, Inc., the sum of $1,223.55 for the merchandise involved in reappraisement 263578–A herein. Terra Chemicals, Inc., remitted to the exporter, Degussa, the consular invoice purchase price in the amount of $1,199.10 (R. 62). The difference between these two sums, namely, $24.45, was retained by Terra Chemicals, Inc., as a profit (R. 55),

which was used, together with a 5 per centum commission granted Terra Chemicals, Inc., by the manufacturer, in paying office expenses (R. 59). In this connection, plaintiff's witness Kertess testified that the price of $1,223.55 paid Terra Chemicals, Inc., by the plaintiff for the merchandise in reappraisement 263578–A was not determined by Terra Chemicals, Inc., but was determined in the purchase order and confirmation directly between the plaintiff and Degussa without the intervention of Terra Chemicals, Inc. (R. 62).

The testimony adduced on plaintiff's behalf, together with the documentary evidence introduced herein showing the relationship between the manufacturer and Terra Chemicals, Inc., in the sale of sodium perborate to the plaintiff, supports a finding, in my opinion, that Terra Chemicals, Inc., was the representative of the manufacturer in this country; that the merchandise here under consideration was sold to the plaintiff by the manufacturer, Degussa; that offers and sales of sodium perborate for export were not restricted to Terra Chemicals, Inc., but that the exporter herein freely offered the involved merchandise to all purchasers in the United States. In the case at bar, the record discloses that orders for the goods herein involved were placed directly with the manufacturer by the plantiff, and such orders were accepted by the manufacturer. The goods were consigned to the manufacturer's agent in this country, and payment for same was made to the latter as the agent of the manufacturer, a situation which supports a finding of export value for the involved goods, other requisite conditions for such valuation under the statute being present. *Robinson & Co. et al. v. United States*, 13 Cust. Ct. Appls. 644 T.D. 41486. See also *United States v. Massce & Co. et al.*, 21 C.C.P.A. (Customs) 54, T.D. 46379.

Further supporting a finding that there was an export value for the involved merchandise, is a list of sales by the manufacturer herein of fine granular grade of sodium perborate (the product here involved) for export to the United States during the period January 1, 1952, to and including May 1958, which record of sales is appended to and made part of an affidavit executed by Friedrich Wilhelm Schmidt, Degussa's sales manager in charge of the sale of sodium perborate for export to the United States, relative to conditions under which sodium perborate was offered and sold for export (paragraph 6, plaintiff's collective exhibit 12 (R. 40)). As representative sales of sodium perborate for export during 1953, "Appendix A" (plaintiff's brief) discloses some 20 direct sales of the product during this period to the plaintiff corporation, as well as to other importers in the United States, namely, Terra Chemicals, Inc., and Interstate Chemicals Corp. Seven of such sales were made in the first quarter of 1953 and are thus too remote for consideration in determining export value of the involved merchandise, exported, as heretofore indicated, between June

25, 1953, and December 24, 1953. Of the remaining 13 sales during 1953, said appendix A indicates that 1 sale was in a quantity of 15,000 kilos; 2 were for 10,000 kilos; 1 for 9,980 kilos; 1 for 6,070 kilos; 1 for 5,040 kilos; 1 for 4,536 kilos; and 6 sales were in a quantity of 5,000 kilos. Accordingly, it appears that 5,000 kilos, representing "the major portion of sales or offers for sale," was the usual wholesale quantity for export of sodium perborate to the United States. *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912; *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093; *F. S. Whelan & Sons* v. *United States*, 39 C.C.P.A. (Customs) 168, C.A.D. 482. The highest invoice and sales price for sodium perborate for export in the quantity of 5,000 kilos is shown in appendix A as $11.40 per 100 pounds, c.i.f., the invoices covering the manufacturer's sales for exportation further indicating that this amount was the highest price for any quantity of sodium perborate directly exported to the United States during the last 9 months of 1953 (paragraph 7, plaintiff's collective exhibit 12). This latter price, in my opinion, represents the proper dutiable value of the involved merchandise, nothing in this record appearing to establish that sales by the manufacturer herein were not freely offered for exportation to all purchasers in the usual wholesale quantity and in the ordinary course of trade.

On the record here presented, I find as facts:

1. That the merchandise under consideration consists of sodium perborate exported from the Federal Republic of Germany between June 25, 1953, and December 24, 1953.

2. That the prices for sales of sodium perborate sold in Western Germany, the country of exportation, were determined by bargaining between the manufacturer and the purchaser.

3. That, on or about the exportation of the involved merchandise, such or similar merchandise was not freely offered for sale to all purchasers for home consumption in the country of exportation.

4. That the principal market for the sale of sodium perborate for export to the United States was Frankfurt, Germany.

5. That the usual wholesale quantity in which sodium perborate was sold or offered for sale for export to the United States was 5,000 kilos.

6. That sodium perborate was freely offered to all purchasers for export to the United States by the manufacturer in Western Germany.

7. That, at the time of exportation of such merchandise, the price at which such merchandise was freely offered for sale and sold to all purchasers in the principal market of Western Germany, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses

incident to placing the merchandise in condition, packed ready for shipment to the United States, was $11.40 per 100 pounds, less ocean freight and insurance.

I conclude as matters of law:

(1). That there is no foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, for such or similar merchandise.

(2). That the proper basis for the determination of the value of the involved merchandise is export value, as that value is defined in section 402(d) of the Tariff Act of 1930, and that such value was $11.40 per 100 pounds, less ocean freight and insurance.

Judgment will issue accordingly.